UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:20-cr-61 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| KEVIN L. DIXON, | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the motion of defendant Kevin L. Dixon ("Dixon") for bond pending plea and sentencing. (Doc. No. 18 ["Mot."].) Plaintiff United States of America (the "government") opposes the motion. (Doc. No. 29 ["Opp'n"].) For the reasons that follow, Dixon's motion is DENIED.

**I. BACKGROUND**

On January 29, 2019, Dixon was charged with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and (9) and 924(a)(2). (Doc. No. 1 [Indictment].) The activity underlying the charge involved Dixon's possession of an Israel Weapon Industries (IWI) .50 caliber Desert Eagle Pistol. (*Id*. at 1-2.) The indictment charges, and Dixon does not deny, that he had multiple felony convictions—including aggravated drug trafficking—which prevented Dixon from possessing a firearm. (*See id*.)

On February 12, 2020, a detention hearing was held and Dixon was ordered detained. In support of detention, the magistrate judge found, "[a]fter considering the factors in 18 U.S.C. §

3142(g) and the information at the detention hearing, . . . the defendant must be detained pending trial because the [g]overnment ha[d] proven [b]y clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community." (Doc. No. 10 [Order of Detention] at 33.) The magistrate judge also found that that the government had proven "[b]y a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required." (*Id*.) In support of these findings, the magistrate judge highlighted the following facts: (1) the weight of the evidence against Dixon is strong, (2) Dixon is subject to a lengthy period of incarceration if convicted, (3) Dixon has a prior criminal history, (4) Dixon has a history of violence or use of weapons, (5) Dixon had previously failed to appear for a proceeding, and (6) Dixon had prior parole/supervised release violations. (*Id*.)

On March 27, 2020, Dixon filed a notice of intent to plead guilty, and a plea and sentencing date has been set for July 16, 2020. Dixon remains incarcerated at Northeast Ohio Correctional Center ("NEOCC") pending a change of plea and sentencing.

II. **DISCUSSION**

On April 8, 2020, Dixon filed the present motion in which he seeks release on bond pending sentencing due to the current health crisis surrounding the COVID-19 pandemic. He posits that he is "in more danger from COVID-19 than a normal healthy adult is" because he suffers from "heart problems and low blood pressure." (Mot. at 69-70.)[1] He insists that he poses

---

[1] Counsel indicates that he has requested a copy of Dixon's medical records from his health care provider but has yet to receive them. (*Id*. at 70.)

2

no risk of flight or danger to the community if released with conditions. (*Id*. at 70.)

### A. 18 U.S.C. § 3143

The parties represent that Dixon's motion is governed by 18 U.S.C. § 3143, which requires that a court detain a person found guilty of certain felony crimes pending sentencing, absent certain narrow exceptions. *See, e.g., United States v. Harris*, No. 19-356, 2020 WL 1503444 (D.D.C. Mar. 27, 2020) (evaluating motion for immediate release due to COVID-19 of defendant awaiting sentencing under § 3143). Under 18 U.S.C. § 3143(a)(2), if a defendant is convicted of a crime of violence, the Court must order the defendant detained. Detainment is mandatory unless (1) there is "a substantial likelihood that a motion for acquittal or new trial will be granted" or "the Government has recommended that no sentence of imprisonment be imposed" and (2) the Court "finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community." 18 U.S.C. § 3143(a)(2). Here, Dixon is subject to mandatory detention, the Court is unaware of any basis for which a motion for a new trial or judgment of acquittal could be granted, and the government is recommending a term of imprisonment. (*See* Opp'n at 75.) Once detained in accordance with § 3143(a)(2), an exception contained in § 3145(c) allows release pending sentencing or appeal "under appropriate conditions, by the judicial officer, if it is clearly shown that there are *exceptional reasons* why such person's detention would not be appropriate" and the defendant poses no risk of flight or danger. 18 U.S.C. § 3145(c) (emphasis added).

The Court finds that Dixon is unable to satisfy either requirement for release. "Exceptional reasons" permitting the release of a defendant subject to mandatory detention are those that "present a unique combination of circumstances giving rise to situations that are out of

the ordinary." *United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir. 1991). There is no dispute that COVID-19 presents serious ongoing concerns for millions of people, especially those with certain underlying medical conditions. It is for this reason that some courts have determined that the heightened threat posed by COVID-19 to an inmate with a documented risk factor in a detention facility with confirmed cases of COVID-19 can present a "unique combination of circumstances" that meets the "exceptional circumstances" requirement. *See, e.g., United States v. McKenzie*, No. 18 Cr. 834 (PAE), 2020 WL 1503669, at *3 (S.D.N.Y. Mar. 30, 2020) (inmate awaiting sentencing in a facility with an outbreak of COVID-19, who had previously been released on bond prior to entering a guilty plea and had a documented respiratory condition, established "exceptional circumstances" to justify his temporary release); *but see United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857 (D. Md. Mar. 17, 2020) (denying request for release due to COVID-19—notwithstanding defendant's asthma, high blood pressure, and diabetes—where defendant posed a risk to others on supervised release). But even assuming that Dixon's undocumented low blood pressure and "heart problems" place him at a higher risk for contracting the COVID-19, the Court finds that Dixon is not entitled to temporary release.

As set forth in the government's response, U.S. Marshals Service has taken extraordinary measures to limit the threat posed by COVID-19. These preventive measures include: (1) aggressive screening, isolation, and treatment of suspected cases of the virus; (2) the placement of limitations on prisoner movements within facilities; and (3) the institution of procedures for staff to call-off and obtain medical care if exhibiting symptoms to avoid exposure to inmates. (Opp'n at 75-76.) Dixon's institution has also taken several safety following measures to stop the spread of the virus. (*Id*. at 77.) While the Court is sympathetic to Dixon's concern about the

COVID-19 virus, "speculation about future conditions does not constitute a 'compelling reason' for temporary release."[2] *See United States v. Bastianelli*, No. 17-305, 2020 WL 1493559, at *1 (W.D. Pa Mar. 27, 2020) (collecting cases denying requests for temporary release due to generalized concerns about COVID-19); *see also United States v. Wages*, 271 F. App'x 726, 728 (10th Cir. 2008) (noting that "it is a rare case in which health conditions present an 'exceptional reason'" to allow release where otherwise detention would be warranted).

Additionally, the Court also finds that Dixon is a flight risk and poses a danger to others and the community, given Dixon's extensive criminal history—which began in 1993 and continued through 2018, and includes domestic violence, falsification, multiple drug possession and trafficking convictions—the nature of the charged offense, his history of supervised release violations, and the fact that he faces a lengthy prison sentence on the charged offense.

**B.     18 U.S.C. § 3142(i)**

As set forth above, the parties limited their discussion of Dixon's request for release to § 3143, the statute governing release of individuals awaiting sentencing. While Dixon has entered an intent to plead, he has yet to offer (and the Court has yet to accept) any such plea. Accordingly, in an abundance of caution, the Court shall also evaluate Dixon's request under the more generous parameters of § 3142. Under the Bail Reform Act, 18 U.S.C. § 3142(i), "[t]he judicial officer may, by subsequent order, permit the temporary release of [a pretrial detainee], in the custody of a United States Marshal or another appropriate person, to the extent that the

---

[2] Specifically, the Court notes that Dixon has not alleged that he has contracted the virus, that he has exhibited symptoms associated with the virus, or that he has been exposed to individuals who have contracted the virus.

5

judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." In *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895 (D. Kan. Mar. 25, 2020) (citing 18 U.S.C. § 3142(i)), the district court observed:

> The court is mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents. But, in that context, a defendant should not be entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation. Rather, the court must make an individualized determination as to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary under § 3142(i). In making that determination, the [Court] will evaluate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

*Id.* at *3. At least one district court in the Sixth Circuit has followed the approach laid out in *Clark*, and this Court, likewise, agrees that this guidance provides a useful framework for addressing requests for release under § 3142(i). *See, e.g., United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *2-3 (S.D. Ohio Mar. 30, 2020) (applying analysis set forth in *Clark* and denying defendant's motion for immediate release under the Bail Reform Act due to COVID-19).

As to the first factor—the original grounds for the defendant's pretrial detention—the magistrate judge ordered Dixon detained upon a finding that he posed a serious flight risk and a risk of danger to others and the community. As set forth above, there is nothing in the record that would cause this Court to reconsider that determination. Moreover, Dixon has now expressed his intent to plead guilty to a serious offense involving the use of a weapon and carrying a significant penalty, and he has a significant criminal history punctuated with violent felonies. These facts counsel against release.

As for the second factor—the specificity of defendant's stated COVID-19 concerns—Dixon offers only his representation that he suffers from "heart problems" and low blood pressure and a speculative fear that he is at a higher risk for contracting COVID-19 at his present facility. He does not provide any documentation regarding his conditions, nor does he allege that he has contracted the virus, that he has any symptoms of the virus, or that he has been exposed to the virus. Moreover, the U.S. Marshals Service has taken extraordinary measures to limit the threat posed by COVID-19. While the Court is sympathetic to Dixon's concern about the possibility of contracting the COVID-19 virus, "speculation about future conditions does not constitute a 'compelling reason' for temporary release." *See United States v. Bastianelli*, No. 17-305, 2020 WL 1493559, at *1 (W.D. Pa Mar. 27, 2020) (collecting cases denying requests for temporary release due to generalized concerns about COVID-19). Although this factor gives the Court pause, given the vagueness of the state of his condition, it is not sufficient to overcome the weight of the other factors that weigh against release.

The third factor—effect of release plan on defendant—also favors continued detention. Dixon offers no details about the circumstances under which he would reside in home detention. For example, he offers no evidence on who will be residing with him at his home, or what precautions will be taken there, including screening and isolation practices, that would keep him safe and limit his exposure to COVID-19. Because the Court cannot even begin to evaluate whether the release plan reduces the risk to Dixon, this factor mitigates against temporary release.

Finally, the fourth factor—effect of the release plan on the public—does not favor temporary release. Given Dixon's extensive criminal history, and history of supervised release

violations, the Court is far from convinced that Dixon would remain compliant on temporary release. "A defendant who is unable to comply with conditions of release poses potential risk to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody." *United States v. Clark*, 2020 WL 1446895, at *7. Courts have found that the increased burden on pretrial services to monitor high-risk prisoners on home detention during this national crisis, as well as the likely risk to law enforcement who would have to take a non-compliant home detainee back into custody, also weigh in favor of denying motions for temporary release. *See, e.g., United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *4 (D. Md. Mar. 17, 2020) (denying request for release due to COVID-19—notwithstanding defendant's asthma, high blood pressure, and diabetes—noting that location monitoring puts pretrial services officers at risk); *United States v. Aiad-Toss*, No. 4:19-cr-00521, 2020 WL 1514482 (N.D. Ohio Mar. 30, 2020) (observing that "releasing . . . to home detention and electronic monitoring creates its own risks and undue burden on pretrial services").

On balance, the Court finds that Dixon has not established his burden of demonstrating reasons sufficient to persuade the Court that temporary release under any statutory provision is warranted.

### III. CONCLUSION

For all the foregoing reasons, as well as the reasons set forth in the government's response opposing the motion, Dixon's motion for bond pending plea and sentencing is DENIED.

**IT IS SO ORDERED**.

Dated: April 17, 2020

                                                **HONORABLE SARA LIOI**
                                                **UNITED STATES DISTRICT JUDGE**